[Crim. No. 18634. Second Dist., Div. Two. Mar. 5, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSE MEDINA, JR., Defendant and Respondent.

## Counsel

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger and Joseph P. Busch, Jr., District Attorneys, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Dale C. Frailey and Dennis A. Fischer, Deputy Public Defenders, for Defendant and Respondent.

## Opinion

**FLEMING, J.**—Appeal by the People from the dismissal of an information.

On 9 March 1970 Jose Medina, Jr., was arrested on a public street in Azusa. At the time of his arrest he was staggering and swaying, he spoke with slurred speech, his eyes were watery, bloodshot, and glassy, and he was unable to pass a sobriety test. His breath did not smell of alcohol, and a post-arrest search disclosed dangerous drugs on his person. Medina was charged with a violation of Penal Code section 647, subdivision (f), being in a public place under the influence of liquor or drugs, and with two violations of Health and Safety Code section 11910, possession of dangerous drugs.

Section 647 provides: "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor: . . . (f) Who is found in any public place under the influence of intoxicating liquor, [or] any drug . . . or any combination . . . in such a condition that he is unable to exercise care for his own safety or the safety of others. . . ."

In 1969 while the Legislature was adopting multiple amendments to section 647, it inadvertently failed to re-enact the section's introductory declaration: "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor." On 23 March 1970 the introductory declaration was restored to the section by emergency legislation. The issue at bench is whether during the interim period section 647 stated a public offense for violation of which a person could be criminally prosecuted. The court below concluded it did not, and thereafter it suppressed the evidence of dangerous drugs and dismissed the information. We have concluded that the order of the trial court was erroneous.

1. Regardless of the validity of section 647, the evidence relating to

possession of dangerous drugs should not have been suppressed. ■ The purpose of the exclusionary rule of evidence is to require the police to comply with constitutional prohibitions against unreasonable searches and seizures. (*People* v. *Cahan,* 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513].) ■ In this case the police officer acted reasonably in arresting Medina as he staggered, glassy-eyed on a public street. Prior to the 1969 amendment public drunkenness had always been a crime in California, and even under the defective text of the amendment it remained the officer's responsibility to protect society from a person who is "in such a condition that he is unable to exercise care for his own safety or the safety of others." We could not expect a police officer to be aware of something the Legislature itself had been unaware, viz., that there had been a temporary inadvertent deletion of the introductory declaration to section 647, nor, even if the officer had been aware of the deletion, could we require him to draw the correct legal conclusion as to its effect, a subject on which judges themselves, as this cause illustrates, have differing opinions. The arrest, therefore, was proper, and since Medina's breath did not smell of alcohol, it was reasonable for the arresting officers to make a cursory search of Medina's person for drugs. Since both arrest and search were valid, the suppression of the evidence of dangerous drugs was erroneous.

2. ■ Did section 647 state a valid offense on 9 March 1970 at a time when, as both parties conceded, the introductory declaration in the section had been inadvertently omitted? Yes. Medina argues that the canons of statutory construction do not permit courts to add to a statute the text of language which has been unintentionally omitted from the statute; he further argues that even if the canons could be interpreted to permit such an addition, his prosecution for a crime of which he had no notice would deny him due process of law.

The argument on statutory construction is not sound. If the intent of the Legislature is clearly ascertainable, words inadvertently omitted from a statute may be supplied in the process of construction in order to effectuate the legislative intent. (*People* v. *Pallares,* 112 Cal.App.2d Supp. 895, 900 [246 P.2d 173].) Directly in point is *People* v. *Williams,* 124 Cal.App.2d 32, 35-37 [268 P.2d 156], where, as here, the Legislature was considering two proposed amendments to the same statute. Both amendments were adopted, but the amendment last in time inadvertently did not include the changes made by the amendment first in time. Under traditional canons of construction the second amendment would have voided changes made in the statute by the first. Nevertheless, the court concluded that the intent of the Legislature was so clearly apparent that the court would read the changes in the first amendment into the second amendment in order to

effectuate the legislative intent. So here—the omission was inadvertent, and the intent of the Legislature was clear. By construction we may supply the missing language. (Cf. Pen. Code, §§ 4, 5, 177, 960, 1258; Cal.Const., art. IV, § 9, art. VI, § 13.) Medina relies on *People* v. *Crutcher,* 262 Cal. App.2d 750, 755 [68 Cal.Rptr. 904], a case involving a criminal prosecution for violation of those Election Code sections which restrict endorsement claims in political literature circulated during primary election campaigns. The court found the prohibition of those sections not penal, because, "Had this been the intent of the Legislature (to make penal that which is specifically enjoinable), certainly it would have done so, and it is not for us to so judicially legislate." Here, unlike *Crutcher,* the legislative intent to punish the prohibited conduct by penal sanction is manifest, and no uncertainty of legislative intent exists.

█ As to the argument on due process, if we assume that between 10 November 1969 and 9 March 1970 Medina checked the latest supplement to the Penal Code and discovered that the Legislature had deleted the introductory declaration to section 647, we believe he would have still received adequate notice of the nature of the offense with which he was later charged. Section 647 is found in part I of the Penal Code, entitled "Of Crimes and Punishments," title 15, entitled "Miscellaneous Crimes," chapter 2, entitled "Of Other Miscellaneous Crimes," and it carries the caption "Disorderly Conduct." The section lists nine acts, among them soliciting, loitering, accosting, and prowling. Other parts of the statute discuss pleadings, trial, conviction, sentence, probation, imprisonment in the county jail, and parole. A reader would have had no difficulty in determining that the Legislature intended to prohibit and punish as misdemeanors those acts listed in section 647. In sharp contrast is *Keeler* v. *Superior Court,* 2 Cal.3d 619 [87 Cal.Rptr. 481, 470 P.2d 617], a case where the court invalidated an attempt to create a new crime (the killing of an unborn fetus as murder) by enlargement of the terms of the existing murder statute.

Finally, we note that this same temporary inadvertent deletion from section 647 formed the basis for a petition for habeas corpus filed with the Supreme Court in *In re McCarthy,* Crim. 14729. The court denied the petition (June 24, 1970), citing in its minute order *People* v. *Williams,* 124 Cal.App.2d 32 [268 P.2d 156], and California Constitution, article IV, section 9. ("A section of a statute may not be amended unless the section is re-enacted as amended.") While denial of a petition for extraordinary relief does not amount to an authoritative interpretation of law, where as in this instance a statute has been at-

tacked as a nullity the denial of the petition logically re-inforces a conclusion that the statute is valid.

The order suppressing evidence and dismissing the information is reversed.

Roth, P. J., and Herndon, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 29, 1971.