[Crim. No. 17204. Second Dist., Div. Five. Apr. 19, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY L. GIBBS, SR., Defendant and Appellant.

## COUNSEL

John R. Sheehan, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Lazubir L. Butler, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AISO, J.**—By information defendant was charged in count I with possession of marijuana for sale (Health & Saf. Code, § 11530.5), in count II with possession of heroin (Health & Saf. Code, § 11500), in count III with possession of cocaine (Health & Saf. Code, § 11500), and in count IV with possession of a restricted dangerous drug (amphetamine) (Health & Saf. Code, § 11910). He pleaded not guilty to all counts. Following a denial of his motion to suppress evidence (Pen. Code, § 1538.5), he withdrew his plea of not guilty as to count I and pled guilty thereto. Probation was denied and he was sentenced to state prison; the other counts charged were then dismissed. Defendant appeals from the judgment seeking review of the trial court's order denying his motion to suppress. (Pen. Code, § 1538.5, subd. (m).)

### I.

The evidence adduced at the section 1538.5 hearing consisted of the testimony of the arresting officer and of the defendant. Not unexpectedly, the testimony was in conflict. The trial court made it clear that the question of credibility was its threshold problem and that it was resolving that issue against defendant and accepting the officer's version as the more probable. Since matters of credibility and the weight to be accorded to evidence in a section 1538.5 hearing rest with the trial court (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409]; *People* v. *Harrington* (1970) 2 Cal.3d 991, 997 [88 Cal.Rptr. 161, 471 P.2d 961]), we set forth the evidence in the light most favorable to the People. Except as otherwise indicated, the historical facts delineated are from the officer's testimony.

On December 30, 1968, Officer Gary C. Bebee of the Los Angeles Police Department assigned to the traffic enforcement division observed defendant as he was driving a station wagon northbound in the number three lane of the Golden State Freeway within the City of Los Angeles.

The station wagon was emitting "excessive exhaust smoke." Bebee had defendant pull over to the right shoulder of the freeway. After bringing his vehicle to a stop, defendant walked to the rear of the vehicle where the officer was standing. Officer Bebee requested to see defendant's driver's license and explained to defendant that he was being stoppd for "excessive exhaust smoke." When asked to be shown the vehicle registration card, defendant told the officer that it "was on the steering column inside the vehicle."

Officer Bebee entertained the impression that defendant might not know that the exhaust from his vehicle was smoking excessively and informed defendant that he "was going to demonstrate the manner in which the vehicle was smoking." Defendant testified that when he stopped, the motor was still running, and that he could see smoke coming out so that a demonstration was unnecessary. However, the record is significantly silent as to whether he so apprised the officer when the officer informed him of the officer's intent to demonstrate. The officer proceeded to the door on the driver's side. When he had "difficulty in attempting to open the driver's door," defendant told him that the door could not be opened from the outside. Defendant came over and opened the left rear door, and opened the front door from the inside of the vehicle. On *voir dire* examination by defense counsel, Officer Bebee testified that he did not ask defendant to open the door, that defendant "just volunteered and assisted [him]."

"As [the officer] entered the vehicle, [he] observed a green paper, partially-smoked, hand-wrapped cigarette resembling a marijuana cigarette laying [*sic*] in plain view in the center of the front seat." This development caused the officer to make a meticulous search of the station wagon and the immediately adjacent ground area, which led to the discovery of the narcotics and dangerous drugs specified in the information. Appellant's opening brief makes mention of the officer's testimony set forth in the transcript of the preliminary hearing, which is even more favorable to the People.[1] However, we disregard the same since that transcript was not introduced at the 1538.5 hearing. ■ Only the evidence before the trial court when it was called upon to rule on the motion may be considered by the reviewing court in the absence of a reopening of the isues relevant to the motion in exceptional situations enumerated in section 1538.5. (*Thompson* v. *Superior Court* (1968) 262 Cal.App.2d 98, 103

---

[1]"Q. And did you open [up] the door? A. With Mr. Gibbs' assistance. There is a little difficulty in opening the door from the outside. He opened the [rear] door [of the station wagon] for me. . . . Q. What observations did you make? A. Laying on the center of the front seat was a green paper, partially-smoked, hand-wrapped cigarette resembling a marijuana cigarette. Q. Did you make this observation from within or without the car? A. It was outside the vehicle, just prior to entering. . . ."

[68 Cal.Rptr. 530]; *People* v. *Superior Court* (1970) 3 Cal.App.3d 476, 482, fn. 3 [83 Cal.Rptr. 771].)

The officer cited defendant for excessive exhaust smoke and for bad brakes as well as arresting him for possession of narcotics.

## II.

Defendant challenges the legality of the officer's initial observation of the marijuana cigarette on the seat of the vehicle since this is determinative of the validity of the searches which ensued. In this connection, he advances the following contentions: (1) there was no probable cause to justify stopping defendant's vehicle since Vehicle Code section 27153 is unconstitutionally vague and indefinite; (2) the officer had no right to enter the vehicle either for the purpose of searching for the registration slip or of demonstrating the emission of excessive smoke; and (3) the defendant's waiver of his *Miranda* rights was defective.

We have concluded that none of these assertions of error have merit and that the judgment should be affirmed.

## III.

■ Whether Vehicle Code section 27153[2] is constitutionally infirm for being vague and indefinite is not relevant to the issue here. The question here is probable cause, not guilt or innocence on the substantive charge of violating that section. In *Pierson* v. *Ray* (1967) 386 U.S. 547 [18 L.Ed. 2d 288, 87 S.Ct. 1213], the plaintiff brought an action[3] against police

---

[2]Vehicle Code section 27153 reads: "No motor vehicle shall be operated in a manner resulting in the escape of excessive smoke, flame, gas, oil, or fuel residue." At the time of defendant's arrest, section 27153.5 of the same code (effective November 13, 1968, but not operative until January 1, 1971) provided: "(a) No motor vehicle first sold or registered as a new motor vehicle on or after January 1, 1971, shall discharge into the atmosphere at elevation of less than 3,000 feet any air contaminant for a period of more than 10 seconds which is: (1) As dark or darker in shade as that designated as No. 1 on the Ringelmann Chart, as published by the United States Bureau of Mines, or (2) Of such opacity as to obscure an observer's view to a degree equal to or greater than does smoke described in paragraph (1) of this subdivision. (b) No motor vehicle first sold or registered prior to January 1, 1971, shall discharge into the atmosphere at elevation of less than 3,000 feet any air contaminant for a period of more than 10 seconds which is: (1) As dark or darker in shade than that designated as No. 2 on the Ringelmann Chart, as published by the United States Bureau of Mines, or (2) Of such opacity as to obscure an observer's view to a degree equal to or greater than does smoke described in paragraph (1) of this subdivision."

[3]The action was based on section 1 of the Civil Rights Act of 1871, 17 Stat. 13, found in 42 U.S.C. section 1983: "Every person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . , shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Portions not pertinent to our case omitted.)

officers who had arrested them under a Mississippi statute later declared unconstitutional. Holding that a post-arrest judicial declaration of unconstitutionality of the statute under which the arresting officers acted did not *per se* vitiate good faith or probable cause on part of the arresting officers, Chief Justice Warren speaking for the court stated: "We hold that the defense of good faith and probable cause . . . available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983. . . . The Court of Appeals ordered dismissal of the common-law count on the theory that the police officers were not required to predict our decision in *Thomas* v. *Mississippi*, 380 U.S. 524, 14 L.Ed.2d 265, 85 S.Ct. 1327 [which declared the Mississippi statute in question unconstitutional]. We agree that a police officer is not charged with predicting the future course of constitutional law." (386 U.S. at p. 557 [18 L.Ed.2d at p. 296, 87 S.Ct. at p. 1219].) The rationale of *Pierson* is equally applicable here. (Also, cf. *People* v. *Edwards* (1970) 14 Cal.App.3d 57, 68 [92 Cal.Rptr. 91].)

Moreover, the constitutional validity of Vehicle Code section 27153 has been upheld against the claim of constitutional infirmity which defendant urges here. (*People* v. *Madearos* (1964) 230 Cal.App.2d 642 [41 Cal.Rptr. 269].) Quoting from a Texas case with approval, the court stated: " 'Every motor vehicle when in normal operation necessarily makes some noise, emits some smoke, and permits gas or steam to escape to some extent. They are in constant operation on our streets and highways and even in the sparsely settled areas of our State they are operated daily within the hearing and view of the citizens. We think any ordinary and interested person would have no difficulty in determining whether or not an excessive and unusual noise or offensive or excessive exhaust fumes accompanied the operation of a motor vehicle.' " (230 Cal.App.2d 644-645.) We agree. (See also *Smith* v. *Peterson* (1955) 131 Cal.App.2d 241 [286 P.2d 522, 49 A.L.R.2d 1194], cited in *Madearos*, holding that the phrase "excessive or unusual noise" in connection with mufflers was not vague and indefinite, and cases cited therein.)[4]

Defendant also argues that the enactment of Vehicle Code section 27153.5 (see fn. 2, *supra*) constitutes a legislative acknowledgment that the wording of section 27153 is vague and indefinite. The more reasonable interpretation, we think, is that effective January 1, 1971, there came into effect two standards to be applied in enforcing section 27153 depending upon the vintage of the vehicle and that the Legislature enacted section 27153.5 foreseeing the need of a sharper line of demarcation between

---

[4] Cf. wording found in Amendment VIII of United States Constitution and article I, section 6, of our state Constitution: "Excessive bail shall not be required, nor excessive fines imposed. . . ."

the two newly created criteria, and not because section 27153 standing alone before the enactment of section 27153.5 was vague and indefinite.

## IV.

■ The officer's entry into the vehicle for the purpose of looking for the registration slip and for demonstrating the fact that defendant's vehicle was emitting excessive smoke did not violate defendant's Fourth Amendment rights. Vehicle Code section 4454, subdivision (a), provides: "Every owner upon receipt of a registration card shall maintain the same or a facsimile copy thereof with the vehicle for which issued." Section 4462, subdivision (a), of the same code provides: "The driver of a motor vehicle shall present the registration or identification card or other evidence of registration of any or all vehicles under his immediate control for examination upon demand of any peace officer." The demand to be shown the vehicle registration card was not unreasonable; in fact, it was necessary so that the citation would reflect the precise vehicle charged with the defective condition of emitting excessive exhaust smoke under normal driving conditions. The defendant's reply that it was on the steering wheel inside the car, in the absence of any evidence that it could be read from outside the vehicle and unaccompanied with any indication that he would fetch it, could be construed as a suggestion that the officer might himself check it. Accompanied by defendant's affirmative acts of cooperation in opening the doors, the officer could have inferred an implied consent to his entering the vehicle for this purpose. In any event, whether there was an implied consent was primarily one of fact for the trial court to determine. (*People* v. *Smith* (1962) 210 Cal.App.2d 252, 256-257 [26 Cal.Rptr. 620].) *Smith* also recognized that a failure to object or to speak up under circumstances similar to the situation presented here was some evidence of a tacit consent. Consent to entry may be manifested by actions as well as by words. (*People* v. *Harrington* (1970) *supra*, 2 Cal.3d 991, 995.)

This same reasoning would apply to the officer's entry for the purpose of demonstrating the smoking condition of the vehicle. But as long as the officer was justified in entering the vehicle to examine the registration card, this phase of defendant's two-pronged attack becomes immaterial.

Consequently, even if the officer did not see the marijuana until he entered the vehicle, his observation of the marijuana cigarette was lawful since it was "in the plain view of an officer who has a right to be in the position to have that view" (*People* v. *Marshall* (1968) 69 Cal.2d 51, 58 [69 Cal.Rptr. 585, 442 P.2d 665]; see also *People* v. *Terry* (1969) 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36], cert. den., 399 U.S. 911 [26 L.Ed.2d 566, 90 S.Ct. 2205]). It also follows that the search and seizure of the contraband triggered off by this observation of the officer

was also legal. (*People* v. *Spelio* (1970) 6 Cal.App.3d 685, 688 [86 Cal. Rptr. 113].)

## V.

■ Defendant has raised no objections to any statements he may have made to the officer prior to the officer's giving him a *Miranda* warning. His objection to the introduction of any statements he made thereafter on the ground that he did not effectively waive his *Miranda* rights is of no moment here. His conviction came in the form of his plea of guilty to the charge in count I. Moreover, no such statements appear in the record properly before us on this appeal. (*Thompson* v. *Superior Court* (1968) *supra,* 262 Cal.App.2d 98, 103; *People* v. *Superior Court* (1970) *supra,* 3 Cal.App.3d 476, 482, fn. 3.) If any such statements do appear in the transcript of the preliminary hearing, any right to object thereto was waived by the guilty plea. (Cf. *People* v. *Warburton* (1970) 7 Cal.App.3d 815, 820-822 [86 Cal.Rptr. 894].) No motion under section 995 of the Penal Code is reflected by the record.

## VI.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1971.