[Civ. No. 44206. First Dist., Div. Three. May 23, 1979.]

ROBERT W. BREWER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, et al.,
Defendants and Appellants.

COUNSEL

Evelle J. Younger, Attorney General, and Robert E. Murphy, Deputy Attorney General, for Defendants and Appellants.

Richard Wesley Johnson for Plaintiff and Respondent.

OPINION

WHITE, P. J.—This is an appeal from a judgment of the Superior Court of Contra Costa County entered pursuant to Code of Civil Procedure section 1094.5, ordering the issuance of a writ of mandamus directing the Department of Motor Vehicles to set aside its decision revoking the license of Robert Brewer.

On March 3, 1976, appellants Department of Motor Vehicles and its director (hereinafter referred to as the Department or appellant), filed an accusation against respondent, a licensed vehicle salesman, alleging that respondent was not of good moral character as provided in Vehicle Code

section 11806, subdivision (5) in that respondent had been convicted of a crime involving moral turpitude, which was cause to suspend or revoke his license.

A hearing was held before the administrative law judge on December 14, 1976. The judge prepared a proposed decision which determined that on November 20, 1975, respondent was convicted of violation of Penal Code section 647a (annoying or molesting a child), a crime of moral turpitude, but that it was not established by the evidence that the incident which resulted in his conviction was in any way connected with any activity related to the exercise of his license privileges. Further, the judge found the evidence did not establish that the Department had statutory authority to suspend or revoke respondent's license. The Department adopted the proposed decision but modified it by providing that respondent's conviction was cause for revocation of his license pursuant to the provisions of Vehicle Code sections 11804, 11806 and/or 11808. Respondent was, however, granted a probationary license.

On September 13, 1977, respondent filed a petition for writ of mandate in the Contra Costa County Superior Court. At the hearing the parties argued the issues of the Department's statutory authority and the requirement of a nexus between respondent's conviction and his occupation. Appellant contended that, at the administrative hearing, the Department had been prevented from inquiring into the nature of the crime for which respondent had been convicted by respondent's objections which were sustained by the administrative law judge. Accordingly, appellant argued below, the lack of evidence connecting the crime and the occupation was the fault of respondent and therefore not a basis for appeal. Nonetheless, on December 27, 1977, the superior court judge granted the petition for writ of mandate and ordered the Department to vacate its order revoking respondent's license to sell vehicles. The judgment was bottomed on the determination that respondent's conviction was of insufficient connection to the business of selling automobiles to warrant suspension or revocation of a license.

On appeal here, appellant argues that respondent did not bear his burden of proof in the trial court, and that he should not have been allowed to raise as an issue there the absence of evidence which was excluded because of his improper objections. Further, appellant argues that the Department had the statutory authority to revoke respondent's license and that it is not necessary to establish a nexus between respondent's criminal conduct and his activities as a salesman.

For reasons we herein explain, we conclude that the trial court's decision is correct.

■ At this juncture, it may prove helpful to observe that the trial court was presented with a case in which it was authorized by law to exercise its independent judgment of the evidence. (See Code Civ. Proc., § 1094.5, subds. (b) and (c).) This is the rule because the suspension or revocation of an existing license, as herein, affects a "vested" right. (See *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33].) When the right affected is "vested," the administrative decision is reviewed by means of a limited trial de novo in which the trial court not only examines the record for errors of law but also exercises its independent judgment upon the *weight* of the evidence produced before the administrative agency, together with any further evidence properly admitted by the court. (*Merrill, supra,* at p. 914.) An abuse of discretion is established if the trial court in the exercise of its independent judgment determines that the findings of the administrative agency are not supported by the weight of the evidence. ■ On an appeal taken from a judgment of the trial court in a mandamus proceeding in a case wherein the trial court is authorized to conduct a limited trial de novo, our appellate province is analogous to that in an ordinary civil appeal: We will recognize and correct errors of law, if any, but a factual finding will be overturned only if the evidence received by the trial court, including the record of the administrative proceeding, is insufficient as a matter of law to sustain the finding. If there is substantial evidence to support the trial court's findings, evidence to the contrary notwithstanding, the findings will not be disturbed on appeal. (See generally 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 216-217, pp. 3972-3974.)

Respondent was disciplined under the 1975 version of Vehicle Code section 11806. That section provided in relevant part: "The department may refuse to issue a vehicle salesman's license when it determines that: . . . [¶] (5) The applicant, . . . is not of good moral character. The conviction of a crime, including a conviction after a plea of nolo contendere, involving moral turpitude shall be prima facie evidence that the applicant is not of good moral character." (Stats. 1975, ch. 505, § 2, p. 1031.) ■ Because the statute made no reference to suspension or revocation of licenses, respondent argued in the trial court that appellant had no statutory authority to revoke his license. *People* v. *Medina* (1971) 15 Cal.App.3d 845 [93 Cal.Rptr. 560], indicates the contrary.

In *Medina,* the court considered a version of Penal Code section 647 in which the Legislature had failed to reenact the introductory declaration which declared that the described conduct was a misdemeanor. The court found that the omission had been inadvertent, pointing to the previous version of the section and the later amended version which restored the introductory declaration by emergency legislation. Having found the clear intent of the Legislature indicated the omission was inadvertent, the court went on to find that under these circumstances, ". . . words inadvertently omitted from a statute may be supplied in the process of construction in order to effectuate the legislative intent." (15 Cal.App.3d at p. 848.)

The intent of the Legislature would appear to be equally clear in the instant case. Before the 1975 version of section 11806, the Department's power to discipline was contained in section 11802 which provided that the Department could ". . . refuse to issue or may suspend or revoke a license, when satisfied that: . . . [¶] 2. The applicant or licensee, . . . is not of good moral character. [¶] The conviction of a crime, including a conviction after a plea of nolo contendere, involving moral turpitude shall be prima facie evidence that the applicant or licensee is not of good moral character." (Stats. 1969, ch. 240, § 4, p. 588.) In 1976, the Legislature restored the reference to revocation and suspension of the vehicle salesman's license to the 1975 version of section 11806. (Stats. 1976, ch. 934, § 4, p. 2139.) With the exception of the fact that the omitted portion was not restored by emergency legislation, the situation in *Medina* exactly parallels the instant case.

The legislative counsel's digest of the 1975 version supports the inference that the omission was inadvertent. The description of the bill states: "The bill would . . . revise the grounds permitting refusal to issue a license or to suspend or revoke a license." (Stats. 1975, ch. 505, No. 6 West's Cal. Legis. Service, p. 1205 [No. 3 Deering's Adv. Legis. Service, p. 749].) This indicates that the purpose of the bill was not to exclude from its provisions disciplinary procedures relating to suspension and revocation of licenses. In fact, section 11806, subdivision (1) of the 1975 version contains the language, "The applicant or licensee." Clearly, the intent of the Legislature was to grant the Department authority to revoke or suspend licenses as well as to refuse to grant them under the conditions listed. The Department therefore had statutory authority to revoke respondent's license.

The parties evidently elected to ignore the trial de novo aspect of the scope of review, and the only "evidence" presented to the trial court consisted of the Department's accusation of respondent, the administrative law judge's proposed decision and the Department's decision. It appears that the reporter's transcript of the administrative proceedings was not in evidence. Consequently, the trial court's task was to consider and decide a question of law. The facts are not in dispute. Respondent possessed a license to sell vehicles; he was convicted by his guilty plea of a crime involving moral turpitude. By statute, the conviction is *some* evidence that respondent is not of good moral character. However, there is no evidence in the record reasonably demonstrating that the evidence of respondent's immoral character relates to his fitness to engage in the vocation of selling automobiles.

The Department relies upon *Wilson* v. *State Personnel Bd.* (1974) 39 Cal.App.3d 218 [114 Cal.Rptr. 134], in support of its contention that there need not be a nexus between respondent's offensive conduct and his ability to perform his job. Wilson, while employed on a part-time basis collected full unemployment compensation; consequently, when charged, he pleaded guilty to a misdemeanor violation of section 2101 of the Unemployment Insurance Code. Wilson's conviction occurred after his appointment to a civil service position with the Department of Human Resources Development. The State Personnel Board based his dismissal on Government Code section 19572, specifying conviction of a misdemeanor involving moral turpitude as a cause for discipline. In reversing the trial court's conclusion that there was not a sufficient connection, the *Wilson* court opined: "No basis appears for creating a special requirement of 'nexus' where conviction of a crime is considered as a ground for discipline. There is no variety of public employment in which conviction of a crime involving moral turpitude would not reasonably be regarded by the appointing authority and the board as grounds for discipline." (39 Cal.App.3d at p. 221.)

We agree generally that all public servants are properly subject to discipline for acts of dishonesty. Public service provides no hiding place for the dishonest and those lacking integrity. But we are not persuaded thereby that when the basis for discipline is the conviction of a crime involving moral turpitude that our law dispenses with the requirement of a showing of "nexus." In any case, appellant's reliance on *Wilson* would appear to be misplaced because there is no issue herein as regards honesty or integrity.

We select as our text for our decision in the case at bench *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 234-235 [82 Cal.Rptr. 175, 461 P.2d 375]. (See also *Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762 [129 Cal.Rptr. 462, 548 P.2d 1134]; *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648].) *Morrison,* of course, is the case of a teacher in the public schools who had his life diplomas revoked by the State Board of Education because he admittedly was involved in a single physical but noncriminal homosexual relationship with another teacher. Morrison's right to teach in the public schools was revoked pursuant to Education Code section 13202 on the basis of immoral and unprofessional conduct and acts involving moral turpitude. In reversing the judgment, the Supreme Court held that Education Code section 13202 authorizes discipline only for conduct indicating unfitness to teach. The court found the statute sufficiently specific to pass constitutional muster when interpreted to this effect, not tending to lead to an unwarranted intrusion upon the right of privacy.

One holding of *Morrison* appropriate to this case is to the effect that terms such as "immoral," and "moral turpitude" constitute only legal abstractions until applied to a specific occupation and given content by reference to fitness for the performance of that vocation. (See also *Cartwright* v. *Board of Chiropractic Examiners, supra,* 16 Cal.3d 762, 767.) Herein, the Department contends that respondent's license to sell automobiles was properly revoked because he is not of good moral character ("immoral") as evidenced by respondent admitting that he once annoyed or molested a child under 18 years of age. We do not agree.

In our view before a criminal offender may be denied a license to engage in gainful work because of a standard requiring good moral character there must be a substantial or rational connection between the committed offense and the particular occupation. (See *Brandt* v. *Fox* (1979) 90 Cal.App.3d 737, 749, fn. 4 [153 Cal.Rptr. 683], pointing out that the view expressed serves to protect the interests of the public by not forcing the individual back into a life of crime.)

In this case, the moral turpitude respondent admitted is an abnormal sexual interest or intent manifested by acts of annoyance or molestation toward children. (*In re Gladys R.* (1970) 1 Cal.3d 855, 868 [83 Cal.Rptr. 671, 464 P.2d 127].) In the law's eye his admitted act is viewed as base, vile and depraved. (See *In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465].) However, the purpose of the moral turpitude and good moral character standards in license

regulatory statutes is not to punish one such as respondent. Presumably the penal law has adequately attended to that task. The paramount purpose of the standards is to protect members of the public when they deal with respondent in his occupation of selling automobiles.

In *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 918, our Supreme Court in the course of considering the meaning to be ascribed to the phrase " 'bona fide . . . dealer' " in vehicles observed, "Looking to the entire statutory scheme governing the licensing of automobile dealers (Veh. Code, div. 5, ch. 4, art. 1) we observe that the primary concern therein manifested is that the public be protected from unscrupulous and irresponsible persons in the sale of vehicles subject to registration under the code." We think the same is true as regards vehicle salespersons. Obviously, honesty and integrity are the primary traits of good moral character that must reasonably relate to the occupation of vehicle salespersons. In our view, a one time sexual offender, as respondent evidently is, whose immorality consists of an abnormal sexual interest in children is not rendered thereby unfit to deal with the public and sell vehicles. We reject appellant's argument that a conviction of violation of Penal Code section 647a is analogous to criminal convictions for violation of Health and Safety Code provisions proscribing sale and possession for sale of restricted dangerous drugs and narcotics, and therefore under the rationale of *Rice* v. *Alcoholic Beverage Control Appeals Bd.* (1979) 89 Cal.App.3d 30 [152 Cal.Rptr. 285], moral turpitude per se. *Rice* v. *Alcoholic Beverage Control Appeals Bd., supra,* involved an alcoholic beverage licensing standard of "moral turpitude." The *Rice* court held "that proof of conviction of the crimes of possessing cocaine or marijuana for purposes of sale constitute moral turpitude as a matter of law within the meaning of article XX, section 22, and Business and Professions Code section 24200 justifying the imposition of administrative sanctions without a further showing of unfitness or unsuitability (see *Otash* v. *Bureau of Private Investigators, supra,* 230 Cal.App.2d 568, 574) or its effect upon the conduct of the licensed business. (*H. D. Wallace & Assoc., Inc.* v. *Dept. of Alcoholic Bev. Control* (1969) 271 Cal.App.2d 589, 593 [76 Cal.Rptr. 749, 36 A.L.R.3d 1362].)" (89 Cal.App.3d at p. 38.)

Appellant's reliance on *Rice* is misplaced. The statute in the instant case makes conviction of a crime involving moral turpitude only "prima facie" or some evidence that the licensee is not of good moral character, not grounds for denial or revocation as a matter of law. Similarly, *Jennings* v. *Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776], is not persuasive authority. As Justice Rouse points out in *Brandt* v. *Fox, supra,*

90 Cal.App.3d 737, 748 (referring to the *Jennings* v. *Karpe* line of authority): "We find the Attorney General's position unpersuasive. All three cases upon which he relies were decided prior to the 1974 legislative revisions to division 1.5 (§ 475 et seq.). In *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, at page 874 [132 Cal.Rptr. 464, 533 P.2d 624], the California Supreme Court pointed out that 'Chapter 1321 of the Statutes of 1974 substantially rewrote the provisions of law governing denial, suspension, and revocation of . . . [business or professional] licenses. (Bus. & Prof. Code, div. 1.5.) . . . [A] conviction can no longer support a denial or revocation of a license unless the crime is "substantially related to the qualifications, functions or duties of the business or profession" in question (Bus. & Prof. Code, §§ 480, subd. (a), & 490.)' "

While *Brandt* is a decision adjudicating the rights of a rehabilitated criminal offender to engage in the real estate profession as regulated by the Business and Professions Code, we perceive no reason not to conclude that the public policy of our state and law is not the same as regards vehicle salesmen. Any other view would present a serious question of denial of equal protection.

Finally, appellant points out, a party may not object to the sufficiency of the evidence to support a finding against him when the lack is the result of improper exclusion of evidence at his own instance. (*Watenpaugh* v. *State Teachers' Retirement System* (1959) 51 Cal.2d 675, 680 [336 P.2d 165].) Appellant contends respondent, therefore, should not have been heard to complain in the superior court that there was no evidence of a connection between his conviction and his occupation as a salesman when it was he who had prevented appellant from introducing such evidence. "A party who has prevented proof of a fact by his erroneous objection will not be permitted to take advantage of his own wrong, and a reviewing court will assume that the fact was duly proved." (*Watenpaugh* v. *State Teachers' Retirement System*, *supra*, at p. 680.) Appellant concludes that the superior court, therefore, should have assumed that the fact of the connection between the conviction and the occupation of selling automobiles had been proved below. On these grounds, appellant urges that the superior court abused its discretion in overturning the Department's decision.

We disagree. The principle of "invited error" is inappropriate to the premises herein. Appellant made no offer of proof (as was the case in *Watenpaugh*) before the administrative judge; therefore we are not presented with a record from which it can be determined that the

evidence excluded was relevant. We are not permitted to assume that the administrative judge's ruling was erroneous. We find it impossible to "assume" underlying facts when there is not the slightest indication as to what they might be. Also, we point out that because the superior court mandamus hearing was a trial de novo, appellant had the opportunity and right to present evidence of the "nexus" for the court's consideration. In our view, appellant waived the right. Precisely for this reason we have decided not to remand to the superior court for further proceedings to determine whether there is a reasonable relationship or connection between the facts of his admitted crime and his qualifications or fitness to sell vehicles. On this record then, we conclude that the trial court did not err. We do not hold that a molester of children can never be disqualified from selling vehicles; rather we hold that in this case there is no apparent connection between the business of selling cars and respondent's conviction of child molesting.

Because a statute can constitutionally bar a person from practicing a lawful profession only for reasons related to his fitness or competence to practice that profession (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254]), we affirm the judgment.

Feinberg, J., and Halvonik, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 1, 1979. Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.