[Civ. No. 46634. First Dist., Div. Three. Apr. 1, 1980.]

SHARON JENNINGS, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND
COUNTY OF SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Dennis P. Ruel for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins, Ronald E. Niver, Robert R. Granucci and Richard G. Tullis, Deputy Attorneys General, for Respondent and Real Party in Interest.

**OPINION**

**WHITE, P. J.**—This petition challenges failure to suppress a plastic bag containing 20 balloons of heroin found under the back seat of a police car used to transport petitioner to jail. Petitioner argues that the seizure was unlawful because it was the fruit of an unlawful arrest made under an unlawful ordinance. We conclude that the obstruction ordinance must be read to require "maliciousness," and that when the requirement is added, both the arrest and the seizure must be found unlawful.

Petitioner was arrested and placed in the patrol car because the officers observed her violate section 20 of the San Francisco Municipal

Code (Police Code), which, as amended in 1977, provides: "No person shall:

"A. Wilfully stand, sit, lie, or sleep in or under any street, sidewalk, passageway, or other public place in such a manner as to obstruct, hinder or delay the free passage or use in the customary manner of such street, sidewalk, passageway, or other public place.

"B. Wilfully stand, sit, lie or sleep in or upon any doorway or way of ingress or egress of any building or other structure without the consent of the owner thereof.

"Nothing contained herein shall be deemed to prohibit persons from sitting on public benches or other public facilities provided for such purpose.

"If any portion of this section is deemed inoperable, it shall not affect the operability of the remaining portion thereof."

Petitioner offended this ordinance on January 16, 1979, when she stood in the area of 582 Haight Street in San Francisco at about 10:30 p.m. for a period of about five minutes. She stood on the sidewalk between the curb and the front door of 582 Haight Street. During the five minutes, five to seven persons passed by her, having to change their direction "to gain free access on Haight Street." In fact "[a] couple had to walk in the street, that would be Haight Street itself, and the others just had to walk around Miss Jennings." There was no evidence concerning whether petitioner was asked by any of these people to move or whether in fact she appeared to notice the effect she was having upon the foot-traffic in her area. She made no threatening motions toward any of them, did not yell at them, and did not attack them. None of the five to seven people complained to the police.

Because the officers had warned petitioner on at least five prior occasions not to commit such a crime, this time they placed her under arrest. Though a section 20A violation is a "citable" offense, the officers determined to book her because of the prior warnings and the fact that she had no good identification. A warrant check also revealed an outstanding traffic citation, but the officer did not identify that as a reason for booking petitioner.

Petitioner contends that section 20A is an unconstitutionally vague ordinance and that its use to arrest her was a veil for a patent narcotics investigation which was otherwise unsupported by reasonable cause. She argues that her conduct was indistinguishable from that of a person waiting for a bus or a friend and that "[i]t certainly cannot be assumed that defendant should have known that she was committing a criminal act. And the alleged prior warnings cannot remove from the wording of the statute the inadequate disclosure of the legislative intent required of statutory law."

San Francisco's authority for adopting section 20 comes directly from the wording of Penal Code section 647c, which provides: "Every person who willfully and maliciously obstructs the free movement of any person on any street, sidewalk or other public place or on or in any place open to the public is guilty of a misdemeanor.

"Nothing in this section affects the power of a county or a city to regulate conduct upon a street, sidewalk, or other public place or on or in a place open to the public." In *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992], the Supreme Court ruled that section 647c, because of its proviso, did not preempt a municipality's authority to regulate obstructions of streets, sidewalks, public places, or places open to the public.

The suggestion for laws such as these may have come from the United States Supreme Court decision in *Shuttlesworth* v. *Birmingham* (1965) 382 U.S. 87 [15 L.Ed.2d 176, 86 S.Ct. 211], decided just two years before Penal Code section 647c was enacted (Stats. 1967, ch. 931, § 1, p. 2412). In that case the defendant was arrested and charged with violating two Birmingham, Alabama ordinances. One made it unlawful for a person or persons "to stand, loiter or walk upon any street or sidewalk in the city as to obstruct free passage over, on or along said street" and made it also unlawful to stand or loiter after having been requested by any police officer to move on. The other made it unlawful to refuse to comply with any lawful order of a police officer. The *Shuttlesworth* court upheld the first only on the strength of an Alabama Court of Appeals ruling narrowing its scope to read the section as "'directed at obstructing the free passage over, on or along a street or sidewalk by the manner in which a person accused stands, loiters or walks thereupon. Our decisions make it clear that the mere refusal to move on after a police officer's requesting that a person standing or loitering

should do so is not enough to support the offense. . . . [T]here must also be a showing of the accused's blocking free passage . . . .' *Middlebrooks* v. *City of Birmingham*, 42 Ala.App. 525, 527, 170 So.2d 424, 426." (382 U.S. at p. 91 [15 L.Ed.2d at pp. 179-180].)

The *Shuttlesworth* court did note, however, that "it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied." (*Id.* [15 L.Ed.2d at p. 180].) In commenting upon the defects of the section if not construed narrowly, the court made the following interesting comments: "Literally read, therefore, the second part of this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. It 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' *Cox* v. *Louisiana* 379 U.S. 536, 579 (separate opinion of Mr. Justice Black). Instinct with its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state." (382 U.S. at pp. 90-91 [15 L.Ed.2d at p. 179].)

In *In re Cox, supra*, the California Supreme Court was presented with a similar attack upon a San Rafael municipal ordinance making it a misdemeanor for a person to remain upon any private property or business premises after being notified by the owner to leave. Because of the manner in which the ordinance interlocked with the Unruh Civil Rights Act the court concluded that the ordinance did not endow the shopping center with an absolute power arbitrarily to exclude a would-be customer from its premises. In further addressing the contention that the ordinance was void on its face, the court focused upon words of an exception to the statute.

The exception prevented "interference with or inhibition of any other exercise of a constitutionally protected right of freedom of speech such as (but not limited to) peaceful expressions of political or religious opinions, not involving offensive personal conduct." The defendant argued that the phrase "offensive personal conduct" was too vague and broad a standard for the regulation of expression or conduct intertwined with expression. Relying heavily upon *Shuttlesworth*, the *Cox* court construed "the trespass ordinance, and particularly the words 'offensive personal conduct,' as applied to the use of streets, sidewalks and other

public areas, to coincide with those offenses punishable under Penal Code section 647c (obstruction of a street, sidewalk, or other public area [citation]) and under Penal Code section 415 (disturbing the peace [citation])." (3 Cal.3d at p. 223.) One must conclude that the *Cox* court at least inferentially upheld the facial validity of Penal Code section 647c.

The *Cox* court's validation of Penal Code section 647c does not signal automatic approval of section 20A, which takes its authority from section 647c. There is a critical difference between the two sections. Penal Code section 647c requires that the obstructing be done "willfully and maliciously," whereas section 20A omits the term "maliciously." Penal Code section 7 defines "willfully" as follows: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage;..." The same section defines "maliciously": "The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law;..." Thus, the requirement of "maliciousness" in section 647c supplies the necessary criminal intent.

Section 20A, requiring only willfulness and prohibiting the mere hindrance or delay of free passage or use of sidewalks in the "customary manner"[1] sweeps in all variety of harmless activities. Certainly the welfare of San Francisco, if jeopardized at all by obstructors of the sidewalk, is jeopardized only by those who act with malice—that is, with a "wish to vex, annoy, or injure another person, or an intent to do a wrongful act." (Pen. Code, § 7, subd. 4.) Section 20A, as it stands, permits in San Francisco the same kind of situation the *Shuttlesworth* court warned against in Birmingham. It provides that "a person may stand on a public sidewalk in [San Francisco] only at the whim of any police officer of that city....Instinct with its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state." (*Shuttlesworth v. Birmingham, supra,* 382 U.S. at pp. 90-91 [15 L.Ed.2d at p. 179].)

---

[1]We note that in the trial court petitioner argued that "customary manner" was a vague description. We need not decide that question at this time since we find the ordinance defective in a different respect more pertinent to this case. However, we do observe that if a requirement of "maliciousness" is read into the ordinance there should

We conclude that section 20A must be read as requiring maliciousness. When we read it that way, we conclude that the section does not justify the arrest of petitioner since there was no evidence to support a strong suspicion petitioner acted with malice in obstructing or hindering sidewalk traffic. However, our discussion does not end with these conclusions. Real party argues that even if section 20A, as written, is declared to be invalid by this court that invalidity would not render the arrest and resulting discovery of heroin illegal because the arresting officers are not obligated to anticipate this court's ruling concerning the ordinance.

In *Michigan* v. *DeFillippo* (1979) 443 U.S. 31, [61 L.Ed.2d 343, 99 S.Ct. 2627], the United States Supreme Court ruled that an arrest made in good faith reliance on an ordinance, which at the time had not been declared unconstitutional, is valid regardless of a subsequent judicial determination of the ordinance's unconstitutionality. The court did recognize a "possible exception" for a law "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." (*Id.*, at p. 38 [61 L.Ed.2d at p. 350].) Real party relies upon the *DeFillippo* opinion.

*DeFillippo* is, of course, controlling on the Fourth Amendment. However, the California Supreme Court has announced in *People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099], and cases cited therein, that article I, section 13, of the California Constitution requires a more exacting standard for cases arising within this state. The United States Supreme Court's interpretation of the Fourth Amendment creates only a minimum standard for reasonable searches. (*Id.*)

Real party also cites *People* v. *Carnesi* (1971) 16 Cal.App.3d 863 [94 Cal.Rptr. 555], where the court anticipated the *DeFillippo* ruling. However, *Carnesi* cited only United States Supreme Court cases to support its ruling. It is true that the California Supreme Court denied hearing in *Carnesi*, and that that court has stated that its denial of hearing is not without significance as to its views. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367

---

be little emphasis upon how the sidewalk was being used by the person obstructed, delayed, or hindered. A malicious obstructor would have difficulty arguing that his obstruction was justified because of uncertainty concerning which persons he was entitled to obstruct.

P.2d 865].) However, the danger inherent in attempting to draw meaning from the Supreme Court's denial of hearing has been graphically displayed in the decision in *In re Hodges*■ (Cal.App.), and subsequent events.[2]

A more recent action taken by the Supreme Court convinces us that neither *DeFillippo* nor *Carnesi* is an accurate expression of California law. In *People* v. *Blair* (1979) 25 Cal.3d 640 [159 Cal.Rptr. 818, 602 P.2d 738], the court was presented with the question of whether to suppress telephone records on the ground that "although they had been legally seized under federal law and under the law of Pennsylvania, the seizure would have violated article I, section 13, of the California Constitution if it had occurred in this state." (*Id.*, at p. 655.) The court concluded that clearly the deterrent effect of the exclusionary rule would not be served by suppression, since the seizure was not illegal where it occurred. It further ruled that judicial integrity was not compromised since the defendant's privacy rights were controlled by the laws of Pennsylvania, where he was a resident at the time of the seizure. It allowed the records to be admitted.

The significance of *Blair* is not in its holding, but in the fact that it undertook a dual inquiry in determining whether to suppress. ■ The court stated emphatically: "From the inception of the exclusionary rule, we have made it clear that the rule has a two-fold purpose: To deter the police from engaging in unconstitutional searches and seizures by removing their incentive to do so, and to relieve the courts from being compelled to participate in illegal conduct. (See, e.g., *People* v. *Cahan* (1955) 44 Cal.2d 434, 445-446...; *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 156-157...; *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 ....)" (*Blair, supra*, at p. 655.)

In both *Carnesi* and *DeFillippo*, the courts looked only at the deterrent effect upon the police officer of a ruling suppressing evidence

[2]In *Hodges*, the Court of Appeal noted that the Supreme Court had denied hearing in *In re Pollock* (1978) 80 Cal.App.3d 779 [145 Cal.Rptr. 833] and *In re Smith* (1978) 81 Cal.App.3d 325 [146 Cal.Rptr. 304], two decisions giving certain kinds of presentence credit for jail time, and that shortly afterwards the high court granted hearing in *In re Rojas*, hearing granted, July 20, 1978 (Crim. 20595), an appellate case which had denied credit in similar circumstances. The *Hodges* court interpreted these facts as showing that the high court was disposed to grant the credit, an interpretation proved wrong when, 14 days later, in *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], the court disapproved the *Pollock* line of reasoning and denied credit to Rojas.

seized under an unconstitutional statute. *Blair* reaffirms the obligation of California courts to consider also the effect upon judicial integrity which would flow from being compelled to participate in illegal conduct. In *Blair*, the conduct was found not to be illegal because the defendant's privacy rights were defined by the laws in force at his place of residence. No such easy answer is available here.

■ We believe that the integrity of the judiciary precludes us from permitting introduction of evidence which, but for the existence of a defective ordinance passed by a California legislative body, could not have been properly seized. Our reasoning is not unlike that expressed by the three dissenters in *DeFillippo*, who stated (Opn. by Brennan, J., joined by Marshall and Stevens, JJ.): "The Court errs, in my view, in focusing on the good faith of the arresting officers and on whether they were entitled to rely upon the validity of the Detroit ordinance. For the dispute in this case is not between the arresting officers and respondent. [Citation.] The dispute is between respondent and the State of Michigan. The ultimate issue is whether the State gathered evidence against respondent through unconstitutional means. Since the State is responsible for the actions of its legislative bodies as well as for the actions of its police, the State can hardly defend against this charge of unconstitutional conduct by arguing that the constitutional defect was the product of legislative action and that the police were merely executing the laws in good faith. [Citations.]" (443 U.S. 31, 42-43 [61 L.Ed.2d 343, 353].) Were we to uphold the trial court's ruling we would be joining with the legislative body in authorizing the gathering of evidence by means of a defective ordinance.[3]

Having reached this conclusion, we must issue the peremptory writ. Let peremptory writ of mandate issue, directing the San Francisco Su-

---

[3]We note a certain similarity between the argument that an officer need not anticipate a court ruling interpreting or striking an ordinance and the argument that an officer's actions may be excused if based on a "reasonable mistake of law." In *People* v. *Teresinski* (1980) 26 Cal.3d 457 [162 Cal.Rptr. 44, 605 P.2d 874], the Supreme Court addressed the latter argument by saying that "[c]ourts on strong policy grounds have generally refused to excuse a police officer's mistake of law. [Citation.] We need not decide, however, whether under exceptional circumstances an officer's reasonable mistake of law might validate police conduct because in this case the officer's mistake cannot be found reasonable." (*Id.* at p. 463.) Were we to analyze this case under the rubric of "reasonable mistake of law," we would reach the same conclusion as the *Teresinski* court: that the officer's mistake could not be found reasonable. However, the "reasonable mistake of law" analysis is better suited to the situation where the officer is unaware of *settled* law. Where, as here, the officer is applying an ordinance which has not yet been found defective or been modified by judicial opinion, the analysis must extend beyond the "reasonableness" question and focus as well upon the legality of the ordinance.

perior Court to vacate its order denying petitioner's motion to suppress and to enter an order suppressing the evidence derived from the unlawful arrest.

Feinberg, J., concurred.

**SCOTT, J.**—I concur with the majority's holding that section 20A of the San Francisco Municipal Code must be read to include "maliciousness" as an element of the offense it creates. I dissent, however, from that portion of the majority opinion which holds that the evidence in this case must be excluded.

The majority hold that there is insufficient evidence to support a strong suspicion petitioner acted with malice in obstructing or hindering sidewalk traffic and, therefore, her arrest was without probable cause. A review of the record, however, reveals that petitioner was observed by the arresting officer for five minutes prior to the arrest on the sidewalk at 582 Haight Street in San Francisco. She was standing by herself in the middle of the sidewalk in such a manner as to hinder or obstruct the flow of traffic. During that time the officer observed five to seven people who had to change their course of direction to gain access to Haight Street because of petitioner, including a couple who had to enter the street in order to pass around her.

Taken alone, this evidence would not be sufficient to support a strong suspicion of malice, but this was not the first instance in which the arresting officer observed such conduct by petitioner. On five prior occasions, within a year of the date of arrest, he had observed petitioner taking up a similar position on the sidewalks of the neighborhood, informed her of the provisions of section 20A, and warned her not to hinder or obstruct traffic on the sidewalk. The last such occasion was less than two weeks prior to the date of arrest.

Penal Code section 7, subdivision 4 provides that the terms "'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act...." Knowing that petitioner was warned on five prior occasions that her conduct constituted a violation of section 20A, an ordinary and prudent man observing her conduct at the time of the arrest would be led to entertain a strong suspicion that petitioner intended to commit a wrongful act. The arresting officer had probable cause for arresting petitioner for a violation of section 20A,

even when it is read to include the element of "maliciousness"; therefore, the resulting seizure of the evidence was valid.

I also disagree with the majority in their holding that the evidence in this case must be suppressed because the arrest was made for a violation of a defectively drafted ordinance, regardless of the fact that the arresting officer acted in good faith in reasonably relying upon the ordinance *as written*, in effecting the arrest. The majority view is directly contrary to the holding of the United States Supreme Court in its recent decision in *Michigan* v. *DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627]. In *DeFillippo* the court held that an arrest made in good faith reliance on an ordinance, which at the time had not been declared unconstitutional, is valid regardless of a subsequent judicial determination of its unconstitutionality. I am not unmindful that the rulings of the United States Supreme Court are not binding upon this court when interpreting the California Constitution. (*People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099].) However, the reasoning in *DeFillippo* is both compelling and consistent with the interpretation given the California Constitution by the courts of this state.

The court in *DeFillippo* focused upon the reasonableness of the arresting officer's conduct. It began its analysis with the fundamental principle that "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe the suspect has committed or is committing an offense." (443 U.S. at p. 36 [61 L.Ed.2d at p. 349].) The court then concluded that, in the case before it, there was abundant probable cause to believe that defendant's conduct violated the terms of the ordinance. It held that the subsequently determined invalidity of the ordinance did not undermine the validity of the arrest, emphasizing that probable cause is determined by looking to the "facts and circumstances within the officer's knowledge." (*Id.*, at p. 37 [61 L.Ed.2d at p. 349].) It concluded that the officer should not be required to anticipate a future holding by the courts but may reasonably rely upon the constitutional validity of the ordinance when effecting the arrest. The court stated (at p. 38 [61 L.Ed.2d at p. 350]): "Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill

served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement."

The principles upon which the court in *DeFillippo* based its conclusion are not foreign to the California Constitution. Probable cause for an arrest exists "when the facts known to the arresting officer 'would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" (*People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) In determining whether probable cause exists for an arrest, the law looks only to the facts and circumstances presented to the officer at the time of the arrest. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 414 [2 Cal.Rptr. 14, 348 P.2d 577].) The fact that we have subsequently interpreted section 20A of the San Francisco Municipal Code to include the element of "maliciousness" does not render the arrest invalid or require the suppression of the evidence which was seized incident to the arrest. The question here is probable cause, not guilt or innocence on the substantive charge of violating the ordinance.

The California courts have faced this issue twice with the same result that I propose here. In *People* v. *Carnesi* (1971) 16 Cal.App.3d 863 [94 Cal.Rptr. 555], the defendant was arrested under a Los Angeles ordinance which proscribed drinking alcoholic beverages upon any street, sidewalk or parkway, or any unlicensed public place. After arrest, four secobarbital capsules were found in his pocket. The defendant contended on appeal that the Los Angeles ordinance was unconstitutional. At the time of the arrest there had been no judicial holding regarding its constitutionality. The court held that this defense was not available to the defendant in the prosecution for dangerous drugs. The court held that the arrest would not be rendered invalid by a subsequent holding that the ordinance was unconstitutional where the officers reasonably relied, in good faith, upon the apparently valid ordinance. Therefore, the court held, the search made incident to the arrest was also valid.

Similarly, in *People* v. *Gibbs* (1971) 16 Cal.App.3d 758 [94 Cal. Rptr. 458], the arresting officer stopped defendant's vehicle because it was emitting excessive exhaust smoke in violation of Vehicle Code section 27153. Upon approaching the vehicle the officer saw, in plain view, a marijuana cigarette in the passenger compartment of the car. A further search yielded other narcotics and dangerous drugs. On appeal the defendant challenged the constitutionality of the Vehicle Code section.

The court held that the constitutionality of section 27153 was not relevant to a determination of probable cause for an arrest, employing the same reasoning utilized in *People* v. *Carnesi, supra.*

The California courts have reached similar conclusions on analogous issues. A search made incidental to an arrest under a state statute is not invalid if it is subsequently discovered that the statute was defectively drafted and did not state a valid offense, where the officer reasonably relied, in good faith, upon the apparent validity of the statute and there was probable cause for the arrest. (*People* v. *Medina* (1971) 15 Cal. App.3d 845 [93 Cal.Rptr. 560].) A search incident to an arrest made under a traffic warrant is not invalid, if the traffic warrant is subsequently found to be defective, where the arresting officer reasonably relied, in good faith, upon its apparent validity. (*People* v. *Weitzer* (1969) 269 Cal.App.2d 274, 294-297 [75 Cal.Rptr. 318].) Similarly, evidence seized in plain view by officers executing a writ of possession is not required to be suppressed, if the statute authorizing the issuance of the writ is found to be unconstitutional, where the arresting officers reasonably relied, in good faith, upon the apparent validity of the writ. (*People* v. *Jackson* (1970) 14 Cal.App.3d 57, 68-69 [92 Cal.Rptr. 91].)

The California courts have also held that an arrest may be valid despite a good faith mistake of law (*Elder* v. *Bd. of Medical Examiners* (1966) 241 Cal.App.2d 246, 261-263 [50 Cal.Rptr. 304]), or mistake of fact (*People* v. *Hill* (1968) 69 Cal.2d 550, 553 [72 Cal.Rptr. 641, 446 P.2d 521]). Further, in searches based on information from informants, our courts have consistently held that it is the reasonableness of the officer's reliance that is important rather than the ultimate validity of the information. (See *People* v. *Hall* (1974) 42 Cal.App.3d 817, 822 [117 Cal.Rptr. 228]; *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 620 [106 Cal.Rptr. 461].)

Running throughout these cases is the underlying assumption that where the arresting officer reasonably relies, in good faith, upon the apparent validity of a statute, court process, or factual information supplied to him, no purpose would be served by excluding evidence discovered incident to an arrest if the statute, court process, or factual information is later found to be invalid or untrue.

The purpose underlying the exclusionary rule is two-fold. It is designed to deter police from engaging in unconstitutional searches and

seizures and to relieve the courts from being compelled to participate in illegal conduct. (*People* v. *Blair* (1979) 25 Cal.3d 640, 655 [159 Cal. Rptr. 818, 602 P.2d 738]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 445-446 [282 P.2d 905, 50 A.L.R.2d 513].) The court in *Blair* expanded upon the rationale underlying the rule in these terms: "The rationale underlying this basis for the rule, as explained in *Cahan*, is that it is morally incongruous for the state to flout constitutional rights and at the same time demand that its citizens obey the law, that government teaches by example, and that if the government becomes a law-breaker, its action breeds contempt for the law. The 'success of the lawless venture depends entirely on the court's lending its aid by allowing the evidence to be introduced. . . . Out of regard for its own dignity as an agency of justice and custodian of liberty the court should not have a hand in such "dirty business."'" (25 Cal.3d at p. 656.) When the San Francisco Board of Supervisors enacted section 20A of the Municipal Code it did not become a "lawbreaker" or engage in a "lawless venture." At most it enacted a defective ordinance whose defects have been cured here by the addition of one word, "maliciousness." This is not the type of "dirty business" which the courts attempt to avoid in invoking the exclusionary rule.

The arresting officer reasonably relied, in good faith, upon the apparent validity of section 20A, as written, in arresting the petitioner. He did not engage in any abusive conduct in effecting the arrest or in obtaining the subsequently seized evidence. No legitimate purpose would be served by excluding the evidence in this case.

I would deny the petition for writ of mandate.

A petition for a rehearing was denied May 1, 1980. Scott, J., was of the opinion that the petition should be granted. The petition of real party in interest for a hearing by the Supreme Court was denied June 4, 1980. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.