Filed 6/30/15  P. v. Binns CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MARQUES SAYYED BINNS,<br><br>        Defendant and Appellant. | B250120<br><br>(Los Angeles County<br>Super. Ct. No. BA403335) |

APPEAL from a judgment of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Affirmed.

Franklin Peters, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Steven Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Marques Sayyed Binns appeals from the judgment entered following his conviction by jury of second degree murder, with various firearm findings.[1] (Pen. Code, §§ 187, 12022.53, subds. (b), (c), & (d).) The court sentenced him to prison for 15 years to life. We affirm.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that about 7:30 p.m. on December 29, 2010, 14-year-old Taburi Watson was shot multiple times and killed near St. Andrews Park at 87th and St. Andrews. A bicycle was nearby in the street. A park employee heard the shots and later saw Watson lying on the ground and two people walking southbound on St. Andrews.

On February 22 and March 29, 2011, Los Angeles Police Detectives Eric Crosson and Samuel Arnold interviewed Creonia Ward. Ward implicated Theron Shakir (her former boyfriend), Timothy Allen (aka Lil Grape), and appellant in the killing as follows. Ward told detectives that Shakir, Allen, and appellant left her house. She also told detectives that on the night of the shooting, Shakir told her the following when the two were later in bed.

Appellant, Shakir, and Allen drove to the park. Appellant remained in the car while Shakir and Allen exited and later shot Watson, who had been on a bicycle. After the shooting, the three went to appellant's mother's house and hid the gun next door. The three later went to Ward's house, where appellant said, "I can't wait to tell Brandon, he's going to be so happy." Ward testified appellant's cousin, Brandon, previously had been shot, and appellant, Shakir, and Allen felt they needed to retaliate.

---

[1] Appellant and codefendant Theron Shakir were jointly tried with separate juries. Shakir is not a party to this appeal.

Following appellant's August 2, 2011 arrest, Crosson and Arnold interviewed appellant. Appellant denied knowledge of any shooting. Appellant later told detectives that on the day of the shooting he texted his girlfriend, falsely telling her that he and Shakir had been in a shootout by the park. Appellant said Shakir, Allen, and appellant had heard gunshots near the park and drove away. Appellant later told detectives that appellant drove Shakir and Allen near the park. Shakir and Allen exited the car and appellant waited for them. Shakir and Allen called about a minute later and appellant picked them up by the park. Appellant denied knowing anyone had done anything. Appellant later said he heard gunshots after Shakir and Allen exited the car, but appellant did not see guns and assumed someone had shot at Shakir and Allen.

On August 3, 2011, Los Angeles Police Detectives Myra Kellum and John Ferreria interviewed appellant. During the interview, appellant expressed concern Crosson and Arnold were making appellant look like a ringleader. Appellant admitted to Kellum and Ferreria that appellant "filtered the fuck out of the story" when talking to Crosson and Arnold. Appellant told Kellum and Ferreria the following. Eight Trey members had been suspected of shooting Brandon, appellant's cousin. Later, on the night of the present offense, appellant, Shakir, and Allen were in Shakir's mother's car. Appellant was driving and receiving directions. Shakir and Allen had guns, but appellant did not know that when they first drove away.

Appellant drove to St. Andrews Park and Shakir and Allen exited. Shakir and Allen went through the park, saw someone, and started shooting. Appellant said, "it would be a lie to say I didn't know what they was fixing to start doing, but not till it was too late; that's when we was already there." (*Sic*.) After the shooting, appellant drove Shakir and Allen to appellant's house and "[t]hen they told him that I hid some guns for

3

them." (*Sic*.) Appellant told detectives that Shakir was saying "it was like a favor to [appellant] to go and shoot."[2]

## ISSUES

Appellant claims (1) Ward's preliminary hearing testimony was inadmissible, (2) the trial court erroneously denied his motion to suppress his confession, (3) the trial court erred by giving CALJIC No. 2.13, and (4) cumulative prejudicial error occurred.

## DISCUSSION

1. *Ward's Preliminary Hearing Testimony Was Admissible.*

On October 31, 2011, a magistrate conducted the preliminary hearing of appellant and Shakir (case No. BA387364).[3] During the hearing, the prosecutor asked Ward if she told detectives she was afraid to testify. Ward indicated she did not want to testify, felt she would incriminate herself, and needed counsel. The magistrate indicated Ward's answer was nonresponsive and the magistrate stated, "We have to hear a question to which a privilege may be asserted." The magistrate indicated it would not then appoint counsel for Ward.

Later, the prosecutor, standing behind Shakir, asked if Ward saw the person the prosecutor was standing behind. Ward replied she needed a lawyer. The magistrate indicated the question could not incriminate Ward. Ward later testified the prosecutor

---

[2]     A police gang expert testified as follows. The Rollin 90's Neighborhood Crips (Rollin 90's) and the Eight Trey Gangster Crips (Eight Trey) were rival gangs. The park was in Eight Trey territory and bordered Rollin 90's territory. Shakir and Allen were Rollin 90's members and Watson was an Eight Trey member. The shooting was committed for the benefit of the Rolling 90's gang. In defense, a defense investigator, called by Shakir as a witness, testified that on May 8, 2012, Ward told the investigator the following. Ward fabricated the story she told police because she was angry with Shakir, who cared more about his child from another woman than his child from Ward. Ward told Shakir's mother that Ward wanted to kill him.

[3]     Based on the Watson killing, appellant and Shakir were held to answer at their first preliminary hearing in case No. BA387364. A new complaint was later filed in case No. BA403335, concerning which appellant and Shakir later waived their right to a preliminary hearing.

4

was standing behind Shakir. Ward denied remembering Arnold interviewed her on February 22 and March 29, 2011. The prosecutor asked whether, during those interviews, she was trying to tell the truth. Ward later testified she needed a lawyer because she did not want to incriminate herself. The magistrate stated Ward was "clearly unwilling to testify" and the prosecutor "simply ha[d] to lay foundations."

Ward denied remembering whether, on February 22, 2011 (1) she told Arnold that Shakir (Ward's boyfriend) told Ward that in December 2010, Shakir shot a boy riding a bicycle or (2) she told detectives that Shakir told Ward that Shakir went to do that shooting with appellant and Lil Grape. Ward also denied remembering whether, on March 29, 2011 (1) she told Arnold that Shakir told Ward that Shakir and others saw a boy riding a bicycle and shot him or (2) she told Arnold that in December 2010, Shakir told Ward that Shakir shot that boy with Lil Grape, and that appellant waited in the car.

On January 9, 2013, the trial court conducted a pretrial hearing concerning whether Ward could invoke her right against self-incrimination. The prosecutor later posed several questions to Ward but Ward, represented by counsel, refused to answer them on the ground they might incriminate her. The court suggested the questions were the same ones posed to Ward at the preliminary hearing. The court ruled Ward could not invoke her right against self-incrimination. Later, the court had a sidebar discussion with Ward's counsel only. After that discussion, the court ruled, based on the representations of Ward's counsel during that discussion, Ward's invocation of her right against self-incrimination was valid and she was unavailable as a witness. The trial court ordered sealed the transcript of the sidebar discussion. Ward's preliminary hearing testimony was admitted into evidence at trial.

Appellant claims Ward's preliminary hearing testimony was inadmissible. We conclude otherwise. The claim raises admissibility issues concerning (1) Ward's preliminary hearing testimony and (2) Ward's February 22 and March 29, 2011 statements, to Crosson and Arnold, in which she related Shakir's statements to her about the killing (see Factual Summary).

a. *Ward's Preliminary Hearing Testimony Was Admissible.*

As discussed, Ward testified at the preliminary hearing to the effect she did not remember telling detectives that Shakir told her that Shakir shot Watson and appellant was involved in the shooting. There is no dispute said testimony fell within the Evidence Code section 1291, subdivision (a) former testimony hearsay exception, except to the extent appellant argues the subdivision is inapplicable because Ward properly invoked her right against self-incrimination and right to counsel at appellant's preliminary hearing. Appellant maintains that, as a consequence of that invocation, Ward was not a "witness," and gave no "testimony," within the meaning of subdivision (a). Appellant's argument is unavailing.

Appellant's argument is based on the assumption Ward properly invoked her right against self-incrimination and right to counsel at the preliminary hearing. However, first, it "is settled that the accused has no standing to object to a violation of another's Fifth Amendment privilege against self-incrimination." (*People v. Badgett* (1995) 10 Cal.4th 330, 343.) Similarly, "defendants lack standing to complain of the violation of another's Sixth Amendment right to counsel. The right to counsel is a personal right [citation], and a violation of that right cannot ordinarily be asserted vicariously." (*Id. at* pp. 343-344.)

Second, "[i]t is settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion." (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 523.) Accordingly, even if appellant could have raised the issues of the alleged violations at the preliminary hearing of anyone's right against self-incrimination and/or right to counsel, the record fails to demonstrate appellant did so by way of a Penal Code section 995 motion. Appellant waived the issues. (*Cf. In re Hannie* (1970) 3 Cal.3d 520, 528; *People v. Gibbs* (1971) 16 Cal.App.3d 758, 765.)

Moreover, for the reasons discussed below, no violation of those rights occurred.[4] We have identified the specific questions concerning which the magistrate concluded Ward had not properly invoked her right against self-incrimination. Appellant has failed to meet his burden of showing the proffered evidence might have incriminated Ward. Moreover, it clearly appears the proffered evidence could not possibly have a tendency to incriminate Ward. No violation of Ward's constitutional right against self-incrimination occurred at the preliminary hearing.[5]

Further, at the preliminary hearing, Ward had a right to counsel to advise her concerning her right against self-incrimination only if (1) it appeared she might give incriminating testimony and (2) the magistrate did not advise her concerning her right against self-incrimination. (*People v. Schroeder* (1991) 227 Cal.App.3d 784, 788.) Those requirements were not met here. No violation of Ward's right to counsel occurred. Ward's preliminary hearing testimony was admissible under the Evidence Code section 1291, subdivision (a) former testimony hearsay exception. Moreover, where, as here, the

---

[4] Evidence Code section 404 states, "Whenever the proffered evidence is claimed to be privileged under Section 940 [the privilege against self-incrimination], the person claiming the privilege has the burden of showing that the proffered evidence might tend to incriminate him; and the proffered evidence is inadmissible unless it clearly appears to the court that the proffered evidence cannot possibly have a tendency to incriminate the person claiming the privilege." "The privilege [against self-incrimination] applies only to matter which is incriminatory; it is the court's duty to judge whether a particular question put has the tendency to subject the witness to punishment for crime. It cannot do so in advance of an actual question being put. It is the court, not the individual, that must make the determination whether invocation of the privilege is proper." (*People v. Apodaca* (1993) 16 Cal.App.4th 1706, 1714.) The "question of privilege with respect to a compelled witness does not arise until he or she answers or refuses to answer a specific question." (*Id.* at p. 1715.) We independently review whether a witness could properly invoke the privilege. (*People v. Seijas* (2005) 36 Cal.4th 291, 304.)

[5] As noted, the nonconfidential record in this case reflects the trial court, based on information not presented to the magistrate, ruled Ward could validly invoke her right against self-incrimination. The differing rulings by the magistrate and trial court on this issue are therefore of no significance. We have reviewed the sealed transcript of the sidebar discussion during which Ward's counsel made representations to the trial court causing it to rule Ward's invocation of her right against self-incrimination was valid.

7

requirements of Evidence Code section 1291 were met, admission of the testimony did not violate appellant's right to confrontation. (*People v. Herrera* (2010) 49 Cal.4th 613, 621.)

      b. *Ward's Statements, and Shakir's Statements, Were Admissible Under the Inconsistent Statement Hearsay Exception.*

Ward made statements to detectives about statements Shakir made to her about the killing. There is no dispute Ward's statements to detectives, as well as the related statements of Shakir to Ward, fell within the Evidence Code section 1235 inconsistent statement hearsay exception, except to the extent appellant argues the subdivision is inapplicable because Ward properly invoked her right against self-incrimination and right to counsel at appellant's preliminary hearing.[6] Appellant maintains that, as a consequence of that invocation (1) Ward did not give "testimony at the hearing" within the meaning of Evidence Code section 1235 and (2) there was no compliance with Evidence Code section 770, subdivision (a).

As previously discussed, appellant's argument is unavailing because he has no standing to object to the alleged violation of Ward's right against self-incrimination or right to counsel, and appellant failed to raise the issues in a Penal Code section 995 motion. Appellant's argument lacks merit because no violation of Ward's right against self-incrimination, or right to counsel, occurred. Ward's statements to detectives

---

[6]    In particular, there is no dispute that, absent appellant's right against self-incrimination and right to counsel arguments, Ward's February 22 and March 29, 2011 statements to detectives were "inconsistent," within the meaning of Penal Code section 1235, with her preliminary hearing testimony. Appellant concedes, "At trial, the People offered, and [the court] admitted, Ward's 'testimony' that she could not recall taking a statement from Shakir, or her giving any statement to police. This testimony was *impeached*." (Italics added.) We accept the concession and its implied concession Ward's statements to detectives relating what Shakir told her about the killing were inconsistent with her preliminary hearing testimony.

8

about Shakir's statements to her about the killing were admissible under the Evidence Code section 1235 inconsistent statement hearsay exception.[7]

c. *Shakir's Statements Were Admissible Under the Declaration Against Interest Hearsay Exception.*

Shakir made statements to Ward about the killing (and Ward related them to detectives). Appellant argues Shakir's statements were inadmissible hearsay violative of his right to confrontation. We disagree. Shakir's statements were admissible under the Evidence Code section 1230 declaration against interest hearsay exception. Section 1230 requires that "the statement when made, . . . so far subjected [the declarant] to the risk of . . . criminal liability, . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

"The proponent of [evidence of a declaration against penal interest] must show that the declarant is unavailable, that the declaration was against the declarant's penal interest when made and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Duarte* (2000) 24 Cal.4th 603, 610-611.) "[A]s California courts have held, ' "a declaration against interest may be admitted in a joint trial so long as the statement satisfies the statutory definition and otherwise satisfies the constitutional requirement of trustworthiness." ' [Citations.]" (*People v. Arceo* (2011)

---

[7] Appellant makes the related claim the trial court erred by using CALJIC No. 2.13 to instruct the jury that "[i]f you disbelieve a witness'[s] testimony that she no longer remembers a certain event, that testimony is inconsistent with a prior statement or statements by her describing that event." He maintains Ward's failure to remember was at most a desire on her part not to incriminate herself, and no one explained to the jury her invocation of her right against self-incrimination. The claim is unavailing because appellant failed to request clarifying or amplifying language for the instruction. (*Cf. People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156.) We reject the argument on its merits because no violation of Ward's right against self-incrimination occurred. No violation of appellant's right to due process occurred. To the extent appellant claims the admission into evidence of Ward's statements to the detectives violated the confrontation clause, we reject the claim because he raised that issue (as distinct from the issue of whether Shakir's statements to Ward violated the confrontation clause) for the first time in his reply brief. (*Cf. People v. Thomas* (1995) 38 Cal.App.4th 1331, 1334 (*Thomas*); *People v. Jackson* (1981) 121 Cal.App.3d 862, 873 (*Jackson*).)

9

195 Cal.App.4th 556, 575 (*Arceo*).)  There is no dispute Shakir was unavailable as a witness.

If the declaration against interest hearsay exception otherwise applies to a statement, the fact the statement also inculpates a nondeclarant, including a defendant, does not render the exception inapplicable.  (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1218-1220.)  We review for abuse of discretion a trial court's ruling as to whether the exception applies.  (*People v. Gordon* (1990) 50 Cal.3d 1223, 1250-1251.)

We previously set forth Shakir's statements to Ward (see Factual Summary). They indicate as follows.  Shakir, Ward's boyfriend, told Ward while the two were in bed that Shakir and Allen *shot* Watson, and Shakir implicated appellant in the shooting. Shakir essentially told Ward he was a direct perpetrator in the murder of Watson. Shakir's statement subjected him to criminal liability and was against his penal interest. (*Arceo, supra,* 195 Cal.App.4th at p. 576.)

Moreover, Shakir purported to speak from personal knowledge.  He did not, in his statement to Ward, minimize his involvement or shift the blame to appellant; if anything, Shakir may have minimized appellant's involvement.  Shakir made his statements, not to police when he was in custody, but to Ward, his girlfriend, in bed.  Shakir's statements "were made in ' "the most reliable circumstance," ' that is, ' "one in which the conversation occurs between friends in a noncoercive setting that fosters uninhibited disclosures." ' " (*Arceo, supra*, 195 Cal.App.4th at p. 578.)

Further, the Rollin 90's and Eight Trey gangs were rivals.  Shakir and Allen were members of the former gang and Watson was a member of the latter; therefore, Shakir and Allen had a motive to shoot and kill Watson.  There was evidence the killing was in retaliation for the shooting of appellant's cousin.  We conclude Shakir's statement to Ward was sufficiently reliable and satisfied the constitutional requirement of trustworthiness, and his statement was admissible under the declaration against interest hearsay exception.  (*Arceo, supra,* 195 Cal.App.4th 556, 575-578.)

Appellant suggests Shakir's statement was inadmissible under the *Bruton/Aranda* rule. (*People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*); *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476] (*Bruton*).) Under that rule, the admission into evidence, against a nontestifying codefendant, of said codefendant's confession which also facially incriminates, *and is inadmissible hearsay as to*, a defendant violates the latter's right to confrontation when the confession is admitted into evidence at their joint jury trial. (*People v. Fletcher* (1996) 13 Cal.4th 451, 455-456; *Aranda, supra,* 63 Cal.2d at pp. 528-531; *Bruton, supra,* 391 U.S. at pp. 124-136 & fn. 3.)

We note appellant and Shakir were tried together, had separate juries, but Shakir's statement was admitted into evidence before appellant's jury. Even if the rule might otherwise have been applicable in this case, it was inapplicable here because Shakir's statements to Ward, his girlfriend, were nontestimonial and thus did not violate the *Bruton/Aranda* rule or appellant's right to confrontation. (*Cf. People v. Gutierrez* (2009) 45 Cal.4th 789, 812-813; *Arceo, supra,* 195 Cal.App.4th at pp. 571, 574-575.)

The *Bruton/Aranda* rule is also inapplicable because Shakir's statement to Ward was not inadmissible hearsay as to appellant; as discussed, both the inconsistent statement, and declaration against interest, hearsay exceptions applied to Shakir's statement to Ward. (*Cf. Arceo, supra,* 195 Cal.App.4th at pp. 571-572 & fn. 6, 575.) Shakir's statement to Ward is distinguishable from Ward's related statement to detectives. (See fn. 7, *ante*.) To the extent appellant claims Ward's statement was testimonial, we reject the claim because he made it for the first time in his reply brief. (*Cf. Thomas, supra,* 38 Cal.App.4th at p. 1334; *Jackson, supra,* 121 Cal.App.3d at p. 873.)

Finally, appellant made incriminating statements (which appellant characterizes as a confession) to Kellum and Ferreria about the Watson killing. Ward testified that Brandon, appellant's cousin, previously had been shot, and appellant, Shakir, and Allen felt they needed to retaliate. After the shooting of Watson, appellant told Ward, "I can't wait to tell Brandon, he's going to be so happy." Any erroneous admission into evidence of Shakir's statement to Ward about the killing, and/or Ward's statement to the detectives

11

relating what Shakir said about the killing, was harmless under any conceivable standard. (*Cf. People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

2. *Appellant's Confession Was Admissible.*

The transcript of appellant's recorded August 2, 2011 statement to Crosson and Arnold reflects as follows. Crosson advised appellant of his *Miranda*[8] rights and appellant indicated he understood them. Appellant subsequently indicated he wanted to talk with Crosson, appellant waived his *Miranda* rights, and appellant said he had nothing to hide from the detectives. Appellant later made a statement to Crosson and Arnold and, on August 3, 2011, appellant made another recorded, transcribed statement to Kellum and Ferreria. Kellum and Ferreria began taking the August 3, 2011 statement at 4:00 a.m.

On or before January 4, 2013, appellant made a pretrial motion alleging his *Miranda* rights had been violated in connection with the above statements. During a hearing on that date, the court indicated it had read the above transcripts. The court found as follows. Appellant waived his *Miranda* rights after the first interview and never subsequently invoked them. Appellant, not the detectives, sought to resume the interview, and appellant sought this to set the record straight that he was not the ringleader and to protect himself concerning his level of involvement in the incident. No *Miranda* violation occurred.

Appellant subsequently indicated to the court that, during booking, Kellum and Ferreria made unrecorded promises to appellant and appellant should have been *Mirandized* prior to his second statement. The court then heard testimony from Kellum concerning whether Kellum and Ferreria had made promises to appellant. Kellum's testimony established the following. Detectives asked Kellum to book appellant. Kellum knew nothing about the case at that time. Kellum and Ferreria took appellant to the station basement for booking. It took perhaps a minute to go to the basement. The booking process took perhaps 20 to 30 minutes.

---

[8]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

While Kellum and Ferreria were booking appellant, appellant said he wanted to talk to them about his case. After booking, Kellum and Ferreria conducted the second interview of appellant at the station and made no promises of leniency. The trial court concluded no promises of benefit were made to appellant. The court denied appellant's "motion." Pertinent facts from appellant's August 2 and August 3, 2011 statements are reflected in the Factual Summary.

Appellant claims his second statement to detectives was "without *Miranda*" and involuntary. We disagree. " '[R]eadvisement [of *Miranda* rights] is unnecessary where the subsequent interrogation is "reasonably contemporaneous" with the prior knowing and intelligent waiver. [Citations.] The courts examine the totality of the circumstances, including the amount of time that has passed since the waiver, any change in the identity of the interrogator or the location of the interview, any official reminder of the prior advisement, the suspect's sophistication or past experience with law enforcement, and any indicia that he subjectively understands and waives his rights.' [Citations.]" (*People v. Pearson* (2012) 53 Cal.4th 306, 316-317 (*Pearson*).)

On August 2, 2011, before his first statement, appellant understood and waived his *Miranda* rights. Appellant concedes he waived them. Appellant never subsequently invoked them. After appellant's first statement given at the station, he initiated the interview leading to his second statement given at the station. The second statement occurred within about 30 minutes of the first. We hold readvisement of appellant's *Miranda* rights prior to the second statement was unnecessary and his second statement was voluntary. (*Cf. People v. Hensley* (2014) 59 Cal.4th 788, 815; see *People v. Mickey* (1991) 54 Cal.3d 612, 647; *In re Aven S.* (1991) 1 Cal.App.4th 69, 75-76.)[9] The fact there may not have been additional factors demonstrating no readvisement was necessary does not compel a contrary conclusion. (*Cf. Pearson, supra*, 53 Cal.4th at p. 317.)

---

[9] In light of our previous discussion, we reject appellant's claim prejudicial cumulative error occurred.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

EDMON, P. J.

EGERTON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.