Filed 3/28/22  P. v. Arellano CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO ARELLANO,<br><br>    Defendant and Appellant. | F078749<br><br>(Super. Ct. No. F14900297)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Amanda D. Cary and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A jury convicted Alejandro Arellano (appellant) of attempted murder (Pen. Code, §§ 664/187)[1] and found true an enhancement for personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)). The court sentenced appellant to 25 years to life plus five years in state prison.

On appeal, appellant contends the trial court should have granted his motion to exclude his custodial interview, alleging his waiver of his *Miranda*[2] rights was not knowing, intelligent, and voluntary because he was under the influence of methamphetamine and other drugs. We conclude the evidence established appellant was able to understand his rights and execute a valid waiver. Appellant also claims the trial court was unaware of its discretion to substitute the section 12022.53, subdivision (d) enhancement with a lesser enhancement within the same section. We agree, and remand the matter for the trial court to exercise its discretion in accordance with *People v. Tirado* (2022) 12 Cal.5th 688.

**PROCEDURAL BACKGROUND**

The Fresno County District Attorney's Office filed a first amended information charging appellant with premeditated attempted murder (§§ 187, subd. (a), 664, subd. (a)), and alleging enhancements for personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)) and personal infliction of great bodily injury (§ 12022.7, subd. (a)). At trial, the jury found appellant guilty of attempted murder and found true the firearm and great bodily injury enhancements but found not true the allegation that the attempted murder was done willfully and with premeditation and deliberation.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

At sentencing, appellant asked the trial court to exercise its discretion to strike the section 12022.53, subdivision (d) firearm enhancement pursuant to section 12022.53, subdivision (h). The court declined to strike the enhancement. Appellant did not ask the court to impose a lesser enhancement, and the court did not discuss it as an option.

## FACTUAL BACKGROUND

On January 8, 2014, around 1:00 p.m., Luis Perez went to a parking lot behind a market to join a group of friends to barbecue and drink beer. Appellant arrived after Perez. Among those present at the barbecue were Trinidad Gudino, and an older man known as Chamaco. Gudino and Perez testified at trial.

### I.    Testimony of Trinidad Gudino

Gudino testified that sometime after appellant arrived at the barbecue, a man named Chava, who suffers from an unspecified mental disability, approached the group. Gudino heard Chava tell appellant and Chamaco that Perez stole money from him. Chamaco became angry, and appellant and Chamaco confronted Perez. Appellant was unarmed, but Chamaco was holding a shovel. Perez denied stealing money from Chava. Gudino then saw appellant go to his truck and retrieve a shotgun. Appellant asked Chava to confirm who stole money from him, and Chava pointed at Perez. Gudino testified appellant instructed Perez, who was facing away from him, to turn around because he did not want to shoot him in the back. Perez turned, and appellant fired the shotgun once from close range, striking Perez in the chest. After firing the shot appellant put the shotgun in his truck and left the scene.

### II.    Testimony of Luis Perez

Perez described the shooting similarly to Gudino but denied speaking to appellant or Chava prior to the shooting. He testified he argued with Chamaco over a taco, but the argument did not involve appellant and took place before he arrived. Immediately before the shooting, Perez heard appellant say: "Turn around because I'm going to kill you."

3.

After the shooting Perez was transported in an ambulance to the hospital, where he remained for more than a week and underwent two surgeries. During an interview with police at the hospital, Perez stated that prior to the shooting he argued with appellant and Chamaco about eating food for which he had not paid.

### III.    Appellant's Arrest and Interview

Appellant was arrested inside of his residence around 4:00 p.m. the afternoon of the shooting. During the arrest a police dog bit appellant on the arm, and he was transported to the hospital for treatment before being taken to the Fresno Police Department. Police located a Dodge Durango registered to appellant parked in front of the residence. Officers searched the Durango and located a shotgun in the rear cargo compartment.

Fresno Police Detectives Luis Carrillo and Adrian Alvarez began their interview with appellant shortly before midnight. The interview was conducted in Spanish and was audio and video recorded. The recording was admitted into evidence and played for the jurors, who were also provided a transcript of the interview translated into English.

At the beginning of the interview Carrillo read appellant his *Miranda* rights, which appellant acknowledged and waived by stating "yes, yes." The details of appellant's *Miranda* waiver are discussed further below.

Appellant told the detectives he drove to the barbecue with the shotgun in the back of his Durango. He stated nothing happened between him and Perez prior to the shooting, but he believed Perez may have been responsible for the death or disappearance of some of his relatives who live in Mexico. At some point during the barbecue, Chamaco told appellant that if he did not "do it," he would hit Perez with a shovel. Appellant did not know why Chamaco wanted to harm Perez but appellant told Chamaco to "confirm it." Appellant stated he then went to his Durango and retrieved the shotgun, which was in the rear of the truck covered in clothing. After ensuring it was loaded,

4.

appellant returned to the group and told Perez: "Look at my face." When Perez turned around appellant shot him once from about seven steps away.

Appellant stated that after the shooting he put the shotgun back in his Durango and drove home. He left the shotgun in the truck and went to sleep. He awoke to a light shining in his eyes, the police commanding him to put his hands up, and a police dog biting his arm.

## IV.    Defense Evidence

The defense evidence at trial centered around appellant's drug use leading up to the shooting. In his interview with police appellant stated he smoked "two hits" of methamphetamine around 8:00 a.m. that morning, which he characterized as "not much." He also stated he smoked one joint of marijuana at the barbecue and was drinking beer. Shanna Palacios, appellant's girlfriend, testified she began regularly using methamphetamine with appellant in December 2013. In the four or five days leading up to the shooting, Palacios and appellant used methamphetamine frequently and did not sleep. They also used methamphetamine multiple times on the morning of the shooting. When appellant used methamphetamine, he would become "paranoid" and "weird" and say things Palacios did not understand. Several of appellant's family members testified appellant's behavior changed in the months leading up to the shooting, noting he had become quiet and reclusive and sometimes spoke incoherently.

Dr. Claudia Cerda, an expert in clinical psychology called by the defense, described the possible effects of methamphetamine use, which may include insomnia, paranoia, hallucinations, and loss of impulse control. Based on her examination of appellant in 2017 and review of police reports and appellant's recorded statement, she opined that appellant had a "substance use disorder" that is now in remission because he is housed in a "controlled setting." The defense also called Dr. Luis Velosa, a psychiatrist appointed by the trial court prior to trial to examine appellant to determine

5.

his competency and sanity. He similarly concluded appellant was suffering from "polysubstance drug abuse and dependance."

## DISCUSSION

I. **The Evidence Showed Appellant Made a Knowing, Intelligent, and Voluntary Waiver of his *Miranda* Rights. Any Presumed Error was Harmless.**

A. **Background**

Prior to trial, appellant moved to exclude the recording of his interview, contending he was incapable of making a knowing, intelligent, and voluntary waiver of his *Miranda* rights due to his use of methamphetamine, marijuana, and alcohol. Appellant challenges the denial of this motion on appeal, claiming the trial court's ruling does not comport with the evidence.

The trial court held an evidentiary hearing on the motion pursuant to Evidence Code section 402, and heard testimony from Detective Carrillo and Detective Alvarez, the officers who interviewed appellant. The court also admitted the recording of the interview and English transcript into evidence.

The interview was conducted in an interview room at the Fresno Police Department headquarters shortly before midnight on the day of the shooting. Carrillo and Alvarez are both fluent in Spanish, so no interpreter was needed. Although they attempted to record the entire interview, the first 15 to 30 minutes were not recorded due to an equipment malfunction.

Carrillo began the interview by reading appellant his *Miranda* rights in Spanish from a department issued *Miranda* warning card. Appellant acknowledged his rights and agreed to speak with the officers by stating, "yes, yes."

Throughout the first part of the interview appellant spoke extensively about his life, his relationship with his girlfriend, his family, and other matters unrelated to the shooting. Carrillo and Alvarez allowed appellant to speak freely on these subjects with little interruption. When asked specific questions about the shooting, appellant listened

6.

and generally provided responsive answers. At the end of the interview after the detectives left the room, appellant appears to fall asleep in his chair.

Carrillo described appellant as calm but forthcoming and eager to talk. Appellant seemed depressed and spoke at length about aspects of his life that were going downhill. Although appellant often rambled, his statements were not random or incoherent. Carrillo thought appellant may have "some type of disability," but had no reason to believe appellant was under the influence of methamphetamine or any other drug.

Alvarez testified he is trained as a drug recognition expert and has interacted with thousands of individuals under the influence of various drugs throughout his 20-year career. His account of the interview and appellant's *Miranda* waiver mirrored Carrillo's testimony. He described appellant as subdued but talkative and forthcoming. Appellant appeared to be coherent and able to understand and comprehend the questions asked. Alvarez did not observe any symptoms that led him to believe appellant was under the influence of drugs or alcohol.

At the conclusion of the hearing the trial court denied the motion. The court began by observing the evidence is uncontroverted that appellant expressly waived his *Miranda* rights. The court then explained that even though appellant admitted using drugs prior to the interview, the use of intoxicating substances alone does not render a person incapable of making a valid waiver, citing *People v. Jackson* (1989) 49 Cal.3d 1170, 1189. The court found appellant's admission to using a small amount of methamphetamine and marijuana, the passage of time between the usage and the interview, and Carrillo's and Alvarez's testimony that appellant did not appear to be under the influence, all support the conclusion appellant was able to make a valid waiver. The court also concluded the recording of the interview shows appellant did not ramble aimlessly and does not suggest appellant was "coerced, improperly induced or unaware of the significance of his words."

**B.    Legal Standards**

"In *Miranda v. Arizona*, the high court held that police must advise a criminal suspect who is in custody of specified Fifth Amendment rights prior to questioning. [Citation.]  As we have held: 'Under the familiar requirements of *Miranda*, ... a suspect may not be subjected to custodial interrogation unless he or she knowingly and intelligently has waived the right to remain silent, to the presence of an attorney, and to appointed counsel in the event the suspect is indigent.' " (*People v. Smith* (2007) 40 Cal.4th 483, 501.)  "Statements elicited in violation of this rule are generally inadmissible in a criminal trial." (*People v. Mayfield* (1997) 14 Cal.4th 668, 732, abrogated on other grounds by *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)

" '*Miranda* holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." [Citation.]  The inquiry has two distinct dimensions.  [Citations.]  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.  [Citations.]' " (*People v. Smith*, *supra*, 40 Cal.4th at pp. 501–502, quoting *Moran v. Burbine* (1986) 475 U.S. 412, 421.)

Voluntary intoxication may support a finding that a *Miranda* waiver was not knowing, intelligent, and voluntary.  However, to prevail on this basis the defendant must show that the intoxication "so impaired his reasoning that he was incapable of freely and rationally choosing to waive his rights and speak with the officers." (*People v. Frye* (1998) 18 Cal.4th 894, 988, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  Accordingly, our high court has "repeatedly rejected claims of

incapacity or incompetence to waive *Miranda* rights premised upon voluntary intoxication or ingestion of drugs, where … there is nothing in the record to indicate that the defendant did not understand his rights and the questions posed to him." (*People v. Clark* (1993) 5 Cal.4th 950, 988, disapproved on other grounds by *People v. Doolin*, *supra*, 45 Cal.4th 390, 421, fn. 22.)

" 'The prosecution bears the burden of demonstrating the validity of the defendant's waiver by a preponderance of the evidence.' " (*People v. Williams* (2010) 49 Cal.4th 405, 425.) "On appeal, we conduct an independent review of the trial court's legal determination and rely upon the trial court's findings on disputed facts if supported by substantial evidence." (*Ibid.*)

### C.    Analysis

We conclude the trial court did not err. The testimony of Carrillo and Alvarez established Carrillo read appellant his *Miranda* rights from a standard police department issued form containing all the necessary advisements, and appellant expressly waived those rights and agreed to speak with the detectives. Their testimony also supports the conclusion appellant was able to execute a valid waiver. They described appellant's demeanor as calm but not lethargic. He was eager to talk, but did not ramble aimlessly or incoherently. Based on their observations, they did not believe appellant was under the influence of drugs or alcohol. Alvarez's conclusion appellant was not intoxicated is particularly significant given his training and experience as a drug recognition expert.

After reviewing the recording and transcript of appellant's interview, we find them to be consistent with the detectives' testimony. Nothing about appellant's appearance, demeanor, or mannerisms is unusual or suggests appellant was heavily intoxicated or impaired. When asked specific questions by Carrillo and Alvarez, appellant's answers were generally responsive and coherent. For example, when Alvarez asked appellant to help him create a diagram of the scene of the shooting, appellant pointed out where he

9.

parked his car, where he was standing when he shot Perez, where other people at the barbecue were standing, and where Perez's body fell after he fired the shot.

Appellant points to specific statements he made during the interview that he claims demonstrate he was suffering from paranoid thoughts and hallucinations consistent with methamphetamine use. For example, appellant notes he told the detectives he shot Perez because he believed he may be responsible for the death or disappearance of his family in Mexico. Appellant also stated he believed various family members and friends are stealing from him or otherwise taking advantage of him. We agree it is unlikely these statements are accurate, and it is possible appellant's thinking was impacted by his methamphetamine use. We also agree that at times appellant gave confusing answers that were difficult to understand. However, we do not find appellant's mental state was so compromised that he was incapable of rational thought or understanding the world around him. Appellant appeared able to understand the detectives' questions, provided responsive answers, and spoke coherently about the shooting and other events of that day.

Considering the totality of the circumstances, we conclude appellant's *Miranda* waiver was knowing, intelligent, and voluntary. The testimony of Carrillo and Alvarez, including their assessment of appellant's level of intoxication and mental state, strongly supports the conclusion appellant was capable of executing a valid waiver. Although the waiver portion of the interview was not recorded, Carrillo and Alvarez describe appellant as making a clear and express waiver after hearing his rights. Moreover, we find the recorded portion of the interview similarly demonstrates appellant had the "requisite level of comprehension" to understand his rights and freely and rationally choose to waive those rights and speak to the detectives. (*Smith*, *supra*, 40 Cal.4th at p. 502.) Therefore, the trial court did not err in denying appellant's motion.

**D.     Testimony and Reports of Dr. Cerda and Dr. Velosa**

Appellant also attempts to rely on the reports and testimony of Dr. Cerda and Dr. Velosa, which he claims established he was suffering from drug-induced psychosis on the day of the shooting. These expert witnesses testified at trial but did not testify at the Evidence Code section 402 hearing, and their reports were never admitted into evidence. In its ruling denying the motion, the trial court noted no expert witnesses testified at the hearing, and the evidence was limited to the testimony of Carrillo and Alvarez and the recording of the interview. Therefore, we do not consider the trial testimony or reports of Dr. Velosa or Dr. Cerda because our review is limited to the evidence before the trial court at the time it made its ruling. (See *People v. Hartsch* (2010) 49 Cal.4th 472, 491; *People v. Gibbs* (1971) 16 Cal.App.3d 758, 761.)

Even if appellant had called Dr. Velosa and Dr. Cerda as witnesses at the evidentiary hearing, it appears extremely unlikely the outcome would have been different. Dr. Cerda did not address appellant's recorded statement in her report. However, Dr. Velosa stated in his report he watched the recording of the interview and made the following observations: Appellant's speech was "rational[], coherent, and goal directed. His responses to questions were clear, coherent. [Appellant] was calm, cooperative. There were not any signs of distress or anxiety. [Appellant] also did not exhibit any type of aggressive violent behaviors and did not exhibit any type of bizarre behaviors or mannerisms." While Dr. Velosa did not specifically opine on appellant's mental state or level of intoxication at the time of the interview, his observations of the recorded interview are consistent with this court's conclusion.

**E.     Harmless Error**

Even if we were to conclude the trial court should have excluded appellant's interview, the error was harmless. " 'We review *Miranda* error under the "harmless beyond a reasonable doubt" standard propounded in *Chapman v. California* (1967) 386 U.S. 18, 24.' " (*People v. Saldana* (2018) 19 Cal.App.5th 432, 463.) Under this

standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman v. California*, *supra*, 386 U.S. at p. 24.) "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous." (*Yates v. Evatt* (1991) 500 U.S. 391, 403, disapproved on other grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73, fn. 4.) Rather, an error did not contribute to the verdict when the record reveals the error was unimportant in relation to everything else the jury considered on the issue in question. (*Ibid.*) "The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279, italics omitted.)

Here, appellant's interview was unnecessary to conclusively establish the elements of attempted murder. Appellant was identified as the shooter by Perez and Gudino, both of whom had previously seen appellant in the same parking lot. Appellant shot Perez from close range in the chest with a shotgun, and according to Perez, immediately before firing the shot appellant stated he was going to kill him. Several hours after the shooting when appellant was arrested, police located a shotgun in his truck. This evidence conclusively established appellant was the shooter and acted with the intent to kill.

Appellant contends the admission of his statement was prejudicial because he was unable to coherently explain to the detectives that an "altercation" took place before the shooting, undercutting a potential attempted voluntary manslaughter defense. We disagree. Although the trial court did instruct the jury on attempted voluntary manslaughter based on sudden quarrel or heat of passion, and while there is some evidence that appellant and Chamaco argued with Perez prior to the shooting, there is nothing to suggest appellant acted in self-defense or that appellant was sufficiently

12.

provoked that he "reacted from passion rather than judgment."  (CALCIRM No. 603.)

Therefore, any error was harmless.

## II. We Will Remand So the Trial Court May Exercise Its Sentencing Discretion Pursuant to Section 12022.53, Subdivision (h), in Accordance with *People v. Tirado.*

Appellant contends the trial court was unaware of its discretion to substitute the section 12022.53, subdivision (d) (section 12022.53(d)) enhancement with a lesser enhancement within the same section.  We agree.  In *People v. Tirado*, our high court explained that the "statutory framework" of section 12022.53, as amended by Senate Bill No. 620 (2017–2018 Reg. Sess.), "permits a court to strike the section 12022.53(d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead."  (*People v. Tirado*, *supra*, 12 Cal.5th at p. 692.)  Here, the trial court only considered whether to strike the section 12022.53(d) enhancement outright but did not consider whether to impose a lesser enhancement.  We therefore conclude this matter should be remanded to the trial court to allow it to exercise its discretion in accordance with *Tirado*.  (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 ["[T]he appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' "].)  We express no opinion on how the court should exercise its discretion on remand.

Respondent argues appellant forfeited the claim by failing to ask the trial court to impose a lesser enhancement.  Appellant was sentenced in January 2019, months before any published case held that section 12022.53, as amended by Senate Bill No. 620, gives the trial court discretion to impose a lesser uncharged statutory enhancement.  (See *People v. Morrison* (2019) 34 Cal.App.5th 217 [filed April 11, 2019].)  " ' "[W]e have excused a failure to object where to require defense counsel to raise an objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law

13.

and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal.' " ' " (*People v. Edwards* (2013) 57 Cal.4th 658, 705.)  Accordingly, appellant's failure to request the court impose a lesser enhancement " 'was excusable, since governing law at the time … afforded scant grounds for objection.' " (*Ibid.*)

## DISPOSITION

The matter is remanded for the trial court to exercise its discretion pursuant to section 12022.53, subdivision (h) in accordance with *People v. Tirado*, *supra*, 12 Cal.5th 688.  In all other respects, the judgment is affirmed.


LEVY, Acting P. J.

WE CONCUR:


PEÑA, J.


MEEHAN, J.